The opinion of the court was delivered by
DüNCAn, J.
This was an amicable issue, to try whether two sums of money, one, of one hundred and sixty-one dollars, paid the testator, the sheriff of Washington county, on the 2d hf September, 1816, and the other of one hundred and twenty-five dollars, on the 22d of October, 1816, on an execution of the bank of Philadelphia against Henry Wise, had been paid over to the bank by the sheriff. The defendants gave evidence of the payment over of the money to Mr. Neal, the cashier of the branch bank at Washington. Mr. Neal, on the other hand, having been released by the bank, negatived flatly these payments; and, to show the mistake of the defendants’ witness, Henry Wise, the plaintiffs offered in evidence the books of the Washington bank, containing an en *51 try admitted to have been made by Mr. Marshall, who is the clerk in that bank.
“ Monday, 3d September, 1816.
W. N. 161.
C. 104,14.
Thus. Officer. . 365,14.”
• It would appear, that when the objection to this evidence was under discussion, the defendants, on notice, exhibited to the court, Sheriff Officer’s bank book, containing the following entries:
“ 1816, dhig. 31st. Cash, - - - 0146.
Sept. 3d. * Do. ... 365,14.”
Nothing could be more persuasive evidence of the mistake of the < witness, as to the payment of the one hundred and sixty-one dollars into the Philadelphia bank, than this entry, to show that on the same day, the same sum of one hundred and sixty-one dollars was deposited in the Washington bank by Mr. Officer. It is barely possible, that on the same day he should have paid into both banks, the same numerical sums, even to the odd number, one; for, without impeaching the integrity of the witness, I can readily conceive, how he might have mistaken one banking house for the other, and how difficult it might be to remove this honest though mistaken impression from his mind; but I cannot so readily account for the identity of the sums. I own, during the argument, the inclination of my mind was, that the evidence should have been received; but on more mature reflection, I am satisfied that to admit it, would be an innovation on the rules of evidence, which the necessity of the case did not require; for iflfcvould have been an easy matter to have produced the clerk, or, if he was dead, or beyond the process of the court (which latter, we understand, was the fact) to have proved it. But no account was given of him. If the record had shown, that the defendants had given their testator’s bank book in evidence, another question would have arisen; but it was all the evidence on the part of the plaintiffs, to prove that on the 3d of September, 1816, Officer paid into the Washington bank the identical sum, that day paid to him by Wise for the Philadelphia bank. Almost all the cases depending on the principle, that memoranda made by a person in the ordinary course of his business, of acts, which his duty in such business requires him to do for others, is admissible evidence of the acts so done, will be found in the opinion of Mr. Justice Stoiiy, in Nicholls v. Webb, 8' Wheat.-333; and that learned judge lays down the safe principle, that such memoranda arc admissible after his death. It is, of course, liable to be impugned by other evidence, and to be encountered by any facts or presumptions which diminish its credibility or certainty.' *52 So such memoranda would be good evidence, if inquiry were made after the person and he could not be found, or was beyond the reach of the process of the court. But this only applies to private writings, and this book, it is contended, is of a public nature; the book of a corporation. To such books, I am willing to ascribe something more than is conceded to entries in private books, and to admit that entries there, may be proved by the book itself, as to any collateral points, as the organization of the company, or user or non user, of which there can be no other evidence; yet it would appear to me dangerous to receive it as proof of a matter of contract, or to make out a fact against another than the corporation, by any entry in their books. To exemplify this; — the books of a public prison are allowed to prove the time of imprisonment or discharge, yet the cause of the imprisonment must be proved by other evidence. So, I would hold here, that the bank book would be evidence of the transfer of the stock of the bank, because the act incorporating the bank, directs that the transfers shall be in the book of the bank, attested by its officers. There the book would be evidence of that fact, because, it is an original of a public nature, and an immediate sworn copy would be-evidence; for though bank books are rather memoranda of the contracts of individuals, and do not in the least degree resemble records, yet as they concern the,.public, in general, and aré necessarily confined to one place, judges have, by analogy, permitted sworn copies to be read in.evidence. But Ido not think it has yet been carried further than a transfer of stock in a public company. (See Peake’s Ev. 91, 246.) Until a late period in England, it was not settled that copies of the books of the bank of England, were legal evidence of a transfer of stock. But where, coi’porations so abound as they do in this state, where chartered banks are so very numerous, except in the cases I have mentioned, and others falling withinthe same reason, I am of opinion it would be dangerous to give to me books a higher authority than the books of a tradesman, or the entries of one whose ordinary business it is to make memoranda of those matters, which his duty requires him to do for others; and although it has been justly observed, that the rules of evidence must expand from time to time, to meet the exigencies of society, yet no exigency here exists, to justify any new doctrine of evidence or breach of established principles. The objection to the evidence here is, that it is in the nature of hearsay evidence, and that the party is deprived of the benefit of cross-examination. If the party is dead, or beyond the process of the court, when there cannót be a personal examination on oath, then the question arises, whether there shall be a total failure of justice, or secondary evidence admitted to prove facts, where ordinary prudence cannot guard against the effects of mortality, or departure of the witness beyond the jurisdiction of the state. But here there was no such ground laid; for aught that appeared, Marshall was within the reach of a subpoena. This may be'a hard case; these *53 bard cases make bad precedents; but the rules of evidence cannot give way to particular hardships. They are general, and of great importance, and cannot be departed from without endangering private, as welLas public rights.
Judgment affirmed.