## GOCHENAUER *against* GOOD.

### IN ERROR.

Neither the books of an incorporated bank, nor copies of them; are admissible in
    evidence against any other than the bank, without proof of the entries in the books
    and the clerk by whom the entries were made, if living, and within the jurisdic-
    tion of the court, is the proper person to make such proof; if dead, or out of
    the jurisdiction of the court, proof may be made of the hand writing of the
    clerk.
It seems that an examined copy, taken from the books of a bank located at a
    great distance from the place of trial, or where they are required, to be
    in different places at the same time, with proof that the original entries were
    made by an officer of the bank, proved by himself, if to be found, and if not with
    proof of his hand writing, is evidence.
In an action by one endorser against another, where each had paid a moiety of the
    debt, to recover from the defendant the amount paid by the plaintiff, on account
    of the defendant having a judgment given to him by the principal debtor, to in-
    demnify him against liability, under which the plaintiff alleged he had obtained
    the full amount of the debt, such judgment, and a paper executed at the time it
    was given, declaring that the judgment was given for such indemnity, are evidence,
    as is also proof that the defendant had received a large sum under such judgment
    out of the estate of the principal debtor, although such judgment of indemnity
    may include other debts.  It was for the jury to determine whether the money
    received, was applicable to such debt, and proof that the money was received un-
    der the judgment, casts upon the defendant the burden of proving that the money
    was received on a different account.
In such case, the plaintiff may recover on counts for money had and received, paid
    laid out and expended, &c.

ERROR to the District Court of *Lancaster* county.

The action was assumpsit, by *Abraham Gochenauer,* against
*John Good,* who had been a joint endorser with him of a note of
one *Nicholas Marks* discounted by the *Farmer's Bank* of *Lan-
caster,* and which, in consequence of the insolvency of *Marks,*
they had been compelled to pay, each paying the half.   The ac-
tion was brought by the plaintiff, to recover from the defend-
ant the money which he had paid; and on account of an indemnity
which *Marks* had given the defendant, and out of which he had
received, as the plaintiff alleged, the full amount of the sum for
which they were joint endorsers.

The first count in the declaration explains the case, and is mate-
rial to understand the exceptions taken on the trial, it was as follows.

*John Good,* was summoned to answer *Abraham Gochenauer* of
of a plea of trespass on the case, and thereupon the said *Abra-
ham Gochenauer,* by *M. M'Kelly,* his attorney, complains a-
gainst the said *John Good,* Esq. for that, whereas a certain *Nich-
olas Marks,* at the county aforesaid, on the 22nd of February,
1816, by his certain writing obligatory, sealed with his seal, (and
which said writing obligatory being in the possession of *John
Good,* Esq. the said *Abraham Gochenauer* cannot produce
to the court here,) acknowledged himself to be held and

firmly bound unto the said *John Good,* his heirs, executors, administrators, or assigns, in the sum of $8000, to be paid to the said *John Good,* or to his certain attorney his executors, administrators or assigns; which said writing obligatory was, and is subject to a certain condition thereunder written, that if the said *Nicholas Marks* would well and truly pay, or cause to be paid, to the said *John Good,* or to his certain attorney, his executors, administrators, or assigns, the sum of $4000, then the obligation to be void and of no effect, or else remain in full force and virtue.    And the said *Abraham* further says, that the said *Nicholas Marks,* by his certain letter or power of attorney, authorized and empowered any attorney of any court of record of the commonwealth of *Pennsylvania,* to appear for him, the said *Nicholas,* and to confess judgment against him, the said *Nicholas,* for the amount of the penpenalty of the aforesaid bond: In pursuance of which letter or power of attorney, judgment was entered in the court of Common Pleas for said county of *Lancaster,* to January term, 1816.    No. 399. Reference thereto being had will more fully appear.    And the said *Abraham Gochenauer* further says, that on or about the time of the sealing and delivering of the aforesaid obligation, the said *John Good,* Esq. under his hand and seal, at the county aforesaid, did execute a collateral instrument of writing, wherein he, the said *John Good,* Esq. did covenant that "the aforesaid bond or obligation, with the warrant, was so made and executed to him," the said *John Good,* Esq. "for the purpose of securing and indemnifying him," the said *John Good,* "against, or for, on account and by reason of being security with, and endorser for the said *Nicholas Marks,* for sundry sums of money, by him, the said *Nicholas,* borrowed and obtained on loan at the *Farmers' Bank of Lancaster,* and from sundry individuals or persons." And he, the said *John Good,* Esq. in the instrument of writing last mentioned aforesaid, doth further covenant and promise, that in case the said *Nicholas Marks* do and shall well and truly pay and satisfy the several debts, sum and sums of money, and all interest thereon, for which the said *John Good* became bound, with and for him as aforesaid, that then, and from thenceforth, the said bond or obligation, together with the warrant to confess judgment thereon, shall cease and be utterly void and of none effect, and be surrendered and delivered up to him, and satisfaction be entered on the record thereof, in case the same shall be entered on record," which said last mentioned instrument of writing, executed as aforesaid, by the said *John Good,* Esq. the said *Abraham Gochenauer* brings here into court.    And the said *Abraham Gochenauer* further says, that in consideration of the aforesaid writing obligatory, executed by the said *Nicholas Marks* as aforesaid, in favor of the said *John Good,* Esq. he, the said *John Good,* became liable on account of the said *Nicholas Marks* for the sum of $1000,

(Gochenauer *v.* Good.)

by writing or endorsing his, the said *John Good*'s name, on a note of hand, or promissory note, dated the 19th March, 1816, at the county aforesaid, whereby the said *Nicholas Marks* promised to pay at the *Farmers' Bank of Lancaster* the sum of $1000 to the order of the said *John Good*, Esq. And the said *Abraham Gochenauer* further says that the last mentioned note of hand, or promissory note, was renewed, according to the custom of the incorporated banks of the commonwealth of Pennsylvania, on the 25th June, 1816, at the *Farmers Bank*, aforesaid for the sum of $950, at which said renewal the said *John Good*, Esq. and a certain *Abraham Shenk* became endorsers for the said *Nicholas Marks*. And the said *Abraham Gochenauer* further says, that the last mentioned note of hand, or promissory note, was continued according to the custom of the said *Farmer's Bank*, with the said *John Good*, Esq. and the said *Abraham Shenk* as indorsers untill the 1st April, 1817, when the said note of hand, or promissory note, was renewed, according to the custom of the said *Farmers' Bank*, on the said first of April, for the sum of eight hundred and fifty dollars, at which last mentioned renewal, the said *John Good*, Esq. and the said *Abraham Gochenauer*, (the present complainant) became endorsers; and the said last mentioned note of hand, or promissory note, was continued in the said *Farmers' Bank*, according to the custom of the said bank, with the said *John Good*, Esq. and the said *Abraham Gochenauer* as endorsers, until it was protested on the 17th October, 1820, for the non-payment of the balance then due, which amounted to a great sum of money, to wit: $580. And the said *Abraham Gochenauer* further says, that on account of the aforesaid liability of them, the said *John Good*, Esq. and the said *Abraham Gochenauer*, the said *Farmers Bank of Lancaster*, on the 27th of August, 1821, at the county aforesaid, obtained judgment against them, the said *John Good*, Esq. and the said *Abraham Gochenauer*, for the aforesaid sum of $580, together with interest and costs, of which last mentioned judgment the said *Abraham Gochenauer* was compelled to pay the sum of $297, on the 22nd of January, 1823, (although the said *John Good*, Esq. by the said writing obligatory, executed by the said *Nicholas Marks*, as aforesaid, had received full value and compensation for the whole amount of the said judgment, obtained by the said *Farmers' Bank*, as aforesaid,) whereby the said *Abraham Gochenauer* hath sustained damage and injury to the amount of $500, and therefore he brings suit, &c.

The plaintiff added counts for money had and received; and for money paid, laid out, and expended.

The following bills of exception were taken upon the trial of the cause.

(Gochenauer *v.* Good.)

1. The cause being at issue, and the jury sworn, the plaintiff,. to maintain the issue on his part, having given in evidence the record of a suit by the *Farmers' Bank of Lancaster* v. *Nicholas Marks, John Good and Abraham Gochenauer*, also an accommodation note, dated 15th August, 1820, for $580, payable 60 days after date, at the *Farmer's Bank* of *Lancaster*, drawn by *Nicholas Marks*, and endorsed by *John Good* and *Abraham Gochenauer*, and the protest of the same, dated the 17th of October, 1820, also the record of the *fi. fa.* issued on the said judgment entered to January term, 1822, No. 97, also, two receipts from the sheriff of *Lancaster* county; one bearing date the 22nd January, 1823, for the payment of $100, and the other the 29th of January, 1823, for two hundred and thirty-six dollars and forty cents, marked No. 182, and having proved that he had paid a moiety of the debt and costs on the said *fi. fa.* the plaintiff then offered the contents of a paper, marked A, as follows, "the plaintiff offers the bank statement, in which it will appear that *Nicholas Marks* had a note discounted, indorsed by *John Good*, Esq. for six hundred dollars, on March 24, 1812, which was enlarged on the 23 June, 1812, to fifteen hundred dollars, and on the 22nd December, 1812, enlarged to twenty one hundred, which note was renewed from time to time, with the same endorser, *John Good*, until the 25th of June, 1816, when it was renewed, indorsed by *John Good*, Esq. and *Abraham Shenk*, for nine hundred and fifty dollars, and so continued, with the same endorsers, until the first April, 1817, at which time it was renewed, and endorsed by *John Good*, and *Abraham Gochenauer* for eight hundred and fifty dollars, and continued with the same endorsers, until the 17th October, 1820, at which time it was protested for $580, and suit brought against *Nicholas Marks, John Good* and *Abraham Gochenauer*. The plaintiff offers, in addition, the record of a judgment, entered to January term, 1816, No 399, for four thousand dollars. *John Good* v. *Nicholas Marks*, in connection with a collateral instrument of writing, given by *John Good* at the time of the said judgment, to wit, the 22nd February, 1816, in which the said judgment is declared expressly to have been given as a mere indemnity for his, *John Good's* being indorser in the *Farmers Bank of Lancaster*, and security for money obtained of divers persons by the said *Nicholas Marks*;' " which was objected to by defendant's counsel; and on argument, the court sustained the objection, to which the plaintiff's counsel did then and there except, and prayed the court to seal this, their bill of exceptions, which is done accordingly.

2. The plaintiff then offered in evidence, the contents of a paper marked B. as follows, "The plaintiff offers the bank statement, to shew when *Abraham Gochenauer* became indorser on the note to the *Farmer's Bank of Lancaster*, for *Nicholas Marks*," which was objected to by defendant's counsel; and on argument, the court

(Gochenauer *v.* Good.)

sustained the objection, to which the plaintiff's counsel did then and there except, and prayed the court to seal this, their bill of exceptions, which is done accordingly.

3. The plaintiff then offered to prove "that *John Good,* the defendant, has received three thousand dollars of the estate of *Nicholas Marks,*" which was objected to by defendant's counsel, and the court sustained the objection, to which the plaintiff's counsel did then and there except, and prayed the court to seal this, their bill of exception, which is done accordingly.

The verdict was for the defendant, and the plaintiff assigned for error respectively, these three bills of exception.

*Champneys* for the plaintiff in error argued that the evidence ought to have been received under the money counts in the declaration, which were sufficient without the special count, *Morris* v. *Taurin,* 1. *Dal.* 51. *Repalge* v. *Emory,* 2 *Dal.* 51. *Hassinger* v. *Solms,* 5 *Serg. & Rawle,*4. There is such a privity between *Gochenauer* and *Good,* that the former should be considered in the character of a surety, and as such entitled to recover from the latter. *Hays* v. *Ward* 4 *John. ch. rep.* 123. 10 *John. Rep.* 524. 2 *Starkie's Ev.* 102, *Piggot* v. *Thompson,* 3 *Bos. & Pul.* 147. The receipt by *Good* of the fund is sufficient to make him liable to any person, who was damnified by *Marks* in the transactions for which it was pledged to him.

*Montgomery* for the defendant in error. The special count in the declaration contains no assumpsit, and the plaintiff is left to rest on the money counts alone. The evidence offered must be considered with reference to these counts.

The bank statement was not evidence, it was offered isolated and alone, without any proof of its authenticity. It was but secondary evidence; the notes themselves should have been produced. Where an original is of a public nature, an examined copy is evidence, but this rule does not apply to the books of a bank which is convenient to the place of trial. When the bank is located at a great distance, it may be different. But the books themselves would not be evidence without proof that they were authentic. *Farmer's Bank* v. *Weidner* 12 *Serg. & Rawle,* 256. *Philadelphia Bank* v. *Officer,* 12 *Serg. & Rawle,* 49.

The judgment against *Marks* in favor of *Good,* was connected with the instrument of writing which was collateral to it. That instrument was not prospective in its operation and could not refer to a note which was not in existence at the time, and with which it was altogether unconnected except perhaps by the bank statement which was properly rejected by the court. And besides a note taken in renewal of another is a satisfaction of the first. *Slaymaker* v. *Gundaker's Ex'rs.* 10 *Serg. & Rawle,* 82.

(Gochenauer *v.* Good.)

This evidence was irrelevant at the time it was offered: if any subsequent evidence then would render it relevant, the rejection of it, when it was offered, before such evidence was given, is not erroneous, *Morrison* v. *Berky*, 7 *Serg. & Rawle*, 238, *Eisenhart* v. *Slaymaker*, 14 *Serg. & Rawle*, 246, *Weidler* v. *The Farmer's Bank*, 11 *Serg. & Rawle*, 139. The same remark applies to the evidence contained in the third bill of exceptions.

The court cannot judge of all the bills of exception collectively; the bills must be examined separately, and if they are not evidence, severally, they are not evidence jointly. *Harwood* v. *Ramsey*, 15 *Serg & Rawle*, 31.

The opinion of the court was delivered by

KENNEDY, J. The plaintiff in error, who was also the plaintiff below, and the defendant had been the joint endorsers of an accommodation note in the Farmer's Bank of *Lancaster*, for *Nicholas Marks*. This note was protested for non-payment, *Nicholas Marks*, as drawer, and the plaintiff and defendant as indorsers of the note, were all sued by the bank, and a judgment obtained against them for five hundred and eighty dollars, with interest thereon, from the 17th of October, 1820, beside the costs of suit, which was paid equally by the plaintiff and defendant; the drawer *Nicholas Marks* being insolvent, and unable to pay any part of it. The plaintiff however alleged, that the defendant had taken a judgment bond of indemnity from *Nicholas Marks*, for and on account of his having indorsed this note. That he had entered up judgment upon the bond, and had received monies from the estate of *Marks*, exceeding in amount the whole of the judgment obtained against them as the endorsers of *Marks*, and that the defendant was therefore bound to reimburse him.

This action was brought to compel the defendant to do so. In the declaration the plaintiff has given a particular statement of the transaction in the first count, to which he has added a count for money had and received and another for money paid, laid out and expended.

The plaintiff, on the trial of the cause, after having given in evidence the record of the judgment obtained by the bank against *Marks*, the defendant and himself, upon the note, as also the note itself, and of a *fi. fa.* having been issued upon that judgment against them, and of his having paid to the sheriff on that *fi. fa.* three hundred and thirty-six dollars and forty cents; then offered in evidence, "the bank statement," by which it would have appeared that *Nicholas Marks* had a note discounted, indorsed by the defendant for six hundred dollars, on the 24th of March, 1812, and that it was continued by renewal from time to time with the name of the defendant as endorser thereon, until the first of April, 1817,

(Gochenauer *v.* Good.)

when it was endorsed by the defendant and the plaintiff jointly, and renewed for nine hundred and fifty dollars, and continued by renewal from that time with their endorsements down to the 17th of October, 1820, when after having been reduced in the interim to $580 it was protested for non-payment. And in addition to this, he offered likewise in evidence, the record of a judgment entered upon a judgment bond in favor of the defendant against *Nicholas Marks*, the drawer of the note, to January term, 1816 for four thousand dollars, in connection with an instrument of writing, of the same date, with the judgment bond, signed by the defendant, declaring that the judgment bond was given to him by *Nicholas Marks* as an indemnity for his, the defendant's, being the endorser of *Marks* in the Farmer's Bank of *Lancaster*, and security for monies obtained of divers persons by the said *Nicholas Marks*, which was objected to by the defendant's counsel, and the testimony overruled by the court; to which the plaintiff's counsel excepted and this forms the first error assigned.

By what is called the "Bank statement" must be understood a copy, or abstract from the bank books, or the bank books themselves, or whether the one or the other, I think neither were admissible as offered in evidence. In *Philadelphia Bank* v. *Officer*, 12 *Serg. & Rawle*, 49, it was decided by this court, that the entry in the books of an incorporated bank was not admissible as evidence to shew a deposite of money, in a suit to which the bank was not a party, unless it be first proved that the clerk who made the entry was dead, or beyond the reach of the process of the court, although it was admitted that the entry offered to be read in evidence in that case, was in the hand-writing of *James Marshall*, who was also admitted to have been a clerk of the bank at the time of making it. I take it to be a general and established principle, that neither copies of the books of an incorporated bank, nor the books themselves, are admissible in evidence against any other than the bank, or without proof being first made, by whom the entries in the book were made: and that the proper witnesses to make such proof are the clerks by whom the entries were made, if to be found within the jurisdiction of the court, but if dead or out of the jurisdiction of the court, proof may be made of their hand-writing. To say that the books only when duly proved, and not copies of them, shall be admitted in evidence, might be to establish a rule that would be attended with great inconvenience; as for instance, when the bank is located at a great distance from the place of trial, and the books in daily use and demand, for the ordinary transactions of the bank with the public, or where the production of them was required at different places at the same time. In these cases it appears to me that it would be almost if not alto-

(Gochenauer *v.* Good.)

gether impracticable to comply with the rule, and therefore an examined copy with proof that the original entries were made by an officer of the bank, and this proved by the officer himself, if to be found, and if not, then upon proof of his hand-writing, might I think, be fairly admitted in evidence. *Ridgeway* v. *the Farmer's Bank,* 12 *Serg. & Rawle,* 263. *Bell et al.* v. *Keely,* 2 *Yeates,* 255.

But the record of the judgment and the writing of the defendant explaining the purpose for which the judgment was given by *Marks,* ought to have been admitted in evidence; because they had obvious bearing upon the ground of the plaintiff's claim: and it would have been for the jury to have decided after hearing the whole evidence, whether the judgment offered to be given in evidence, was taken by the defendant for the purpose of indemnifying him against the amount of the note endorsed by him and the plaintiff, had paid by them for *Marks,* and whether again the defendant had not received the whole amount of the note so endorsed and paid under the judgment. And if the jury had been satisfied that it was so, the plaintiff would have been entitled to their verdict. The record of this judgment, and the written declaration of the defendant, shewing the object of the judgment formed quite a prominent link in a chain of evidence to establish the plaintiff's claim, and ought therfore to have been admitted. There was error in rejecting it.

What I have already said in regard to the court below refusing to admit the bank statement in evidence, dispose of the second error assigned by the plaintiff, and shews that the court were right in rejecting it again when offered the second time.

The third and last error arises out of a third bill of exception. The court over-ruled proof offered by the plaintiff, that the defendant had received three thousand dollars of the estate of *Nicholas Marks,* the drawer of the note.

I can see no good reason for rejecting this proof. For it is a part of the three thousand dollars which the plaintiff offered to prove had been received by the defendant, of the estate of *Marks,* were received by him for the purpose of paying the amount of the note endorsed by the plaintiff and defendant or to indemnify against or for having paid the same, it would have been money held in trust for the plaintiff, so far as he had contributed to the payment of the note, and he would have been entitled to recover it from the defendant under the money counts in his declaration. To justify the jury in finding that as much of the three thousand dollars as would have satisfied this note or the amount of money paid by the defendant and plaintiff in discharge of it, was received by the defendant for that purpose, it would have been sufficient for the plaintiff to have proved merely that the defendant received

36

(Gochenauer *v.* Good.)

the money, out of the estate of *Nicholas Marks,* without proving on what account he received it, or a different amount from that alleged by the plaintiff.   This I think would have been fair, because if received on a different amount, the defendant must know although the plaintiff might not.   At all events, *the proof* was proper testimony to have gone to the jury, and it would have remained with them to have decided as a matter of fact, for what purpose the defendant had received the money.   I think there was error also in rejecting this proof offered by the plaintiff.   The judgment of the district court is reversed and a *venire de novo award-ed.*